IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RANDALL S. ALLOWAY,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

Civ. No. 3:16-cv-02302-CL

OPINION & ORDER

MARK D. CLARKE, Magistrate Judge.

Plaintiff Randall S. Alloway seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income pursuant to the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.[1]

## BACKGROUND

Plaintiff was born February 18, 1957, and is currently sixty years old. Tr. 42. Plaintiff has an eleventh-grade education and previously worked selling billboard advertising. Tr. 419. In August 2012, Plaintiff filed an application for supplemental security income; he alleged disability onset as of December 31, 2000. Tr. 18.

---

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

Page 1 – OPINION & ORDER

Plaintiff's previous instance of gainful employment was well over a decade ago when he worked for four years selling billboard advertising. Tr. 419. Plaintiff has not been employed since that time and, in fact, at the time of his hearing, had been homeless and living in a tent outside Portland, Oregon, for two years. Tr. 419. Plaintiff is a veteran, having served in the Marine Corps for four months before receiving an honorable discharge. Tr. 419.

At age twelve, Plaintiff reports "he fell 30 to 40 feet when sitting on a tree vine." Tr. 410. He states that he has had back problems ever since and that they have worsened over time. Tr. 410. In addition to back problems, which appear predominately concentrated in the lower back, Tr. 381, 433-34, Plaintiff has also been diagnosed with antisocial personality disorder, adjustment disorder with a depressed mood, and chronic obstructive pulmonary disease, or COPD. Tr. 381, 410-11, 420, 433-34.

On November 27, 2012, Tatsuro Ogisu, M.D., conducted a comprehensive musculoskeletal examination on Plaintiff. Tr. 410-16. Dr. Ogisu made a number of findings, some based on Plaintiff's subjective reporting and some based on his physical examination of Plaintiff. Tr. 410-16. Specifically, Dr. Ogisu noted that Plaintiff reported a history of lower-back problems stemming from his fall at twelve; he noted that Plaintiff reported the lower-back "flares" on a "daily basis" and that the pain is aggravated due to physical exertion, being upset, and "[s]ometimes" because of sneezing and coughing. Tr. 410. Moreover, he noted that Plaintiff "states requiring assistance with lifting and sometimes walking" and uses a cane to aid him in so doing. Tr. 411.

As for Dr. Ogisu's physical observations, he opined that Plaintiff had no difficulty getting on and off the exam table and "goes from stand to sit and vice versa as well as sit to supine and vise versa [sic] without difficulty," though Plaintiff does "lean[] on his cane or seeks other

support." Tr. 411. He further reported a "far-head-forward" and "mildly kyphotic" posture; a flattened lumbar lordosis; uneven shoulders and pelvis with a corresponding list to the spine; tenderness over the lumbar spine; discomfort with flexion and extension of the lumbar spine; lower-extremity asymmetries; "no unusual vertebral prominence or depression"; a full range of motion at the hips, knees, and ankles, with some pain experienced in the hips; "good" reaching abilities with minimal decrease in overhead reaching; normal muscle tone; and "no obvious atrophy" in the upper extremities. Tr. 411-12. Finally, Dr. Ogisu reported full or close-to-full strength in Plaintiff's shoulder abductors, shoulder rotators, biceps, triceps, wrists, hands, hip flexors, hip abductors, knee extensors and flexors, and ankle dorsiflexors and plantar flexors. Tr. 412-13.

Dr. Ogisu then concluded that Plaintiff had "[c]hronic lower back pain," noting that Plaintiff was having a lot of "mechanical pain." Tr. 413. He further opined that Plaintiff could sit and stand for six hours in an eight-hour workday, walk for "at least half the time but less than 6 hours" in an eight-hour workday, and could only lift and carry up to ten pounds occasionally and five pounds frequently. Tr. 413.

Plaintiff had a hearing in front of an administrative law judge ("ALJ") in December 2014. Tr. 34-64. In April 2015, the ALJ issued her decision, which found that the severe impairments Plaintiff suffered from did preclude his ability to perform past relevant work but did not preclude him from performing other work that exists in significant numbers in the national economy, including dishwasher, linen-room worker, and hospital housekeeper. Tr. 26-28. Accordingly, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act.[2] Tr. 28. On

---

[2]Plaintiff's claim had been initially denied on January 3, 2013, and upon reconsideration on July 12, 2013. Tr. 18.

Page 3 – OPINION & ORDER

October 6, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);

416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citation omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff has not engage in substantial gainful activity since August 3, 2012, the application date. (20 CFR § 404.1571 *et seq.*). Tr. 20.[3]

2. Plaintiff has the following severe medically determinable impairments: COPD, chronic lower-back pain, adjustment disorder with depressed mood, and antisocial personality disorder. (20 CFR § 404.1520(c)). Tr. 20.

3. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 21.

   a. Plaintiff has the RFC to lift and carry twenty-five pounds frequently and fifty pounds occasionally, and he can stand, walk, and sit up to eight hours in an eight-hour workday. He can frequently balance, stoop, kneel, crouch, and crawl. He must avoid exposure to extremes of cold and humidity and must avoid respiratory irritants, such as dusts, fumes, odors, and gases. He also should not have more than occasional superficial interaction with the general public, specifically, no in-depth discussions or mediation- or negotiation-type tasks with the general public. Tr. 22.

4. Plaintiff is unable to perform any past relevant work. (20 CFR § 404.1565). Tr. 26.

5. After considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (20 CFR §§ 404.1569 and 404.1569(a)). Those jobs include dishwasher, linen-room worker, and hospital housekeeper. Tr. 27-28.

The ALJ thus concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42

---

[3] As the ALJ noted, Plaintiff's alleged onset date of December 31, 2000, intruded upon a prior decision by the Social Security Administration. Tr. 18.

Page 6 – OPINION & ORDER

U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff's only argument on appeal is that the ALJ erred by giving little weight to Dr. Ogisu's opinion that Plaintiff could sit and stand for six hours in an eight-hour workday, walk for at least four hours but less than six hours in an eight-hour workday, and could only lift and carry up to ten pounds occasionally and five pounds frequently. For the reasons below, the Court holds that the ALJ erred.

### I. The ALJ improperly attributed "little weight" to Dr. Ogisu's opinion

As stated, Plaintiff contends the ALJ's assignment of "little weight" to Dr. Ogisu's medical opinion was erroneous. An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). When the treating or examining physician's opinion has been contradicted, however, it may be rejected for "'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, as noted, Dr. Ogisu opined that Plaintiff had no difficulty getting on and off the exam table and changing from sit to stand and vice versa, though he did "lean[] on his cane or seeks other support." Tr. 411. Dr. Ogisu also reported a "far-head-forward" and "mildly kyphotic" posture; a flattened lumbar lordosis; uneven shoulders and pelvis with a corresponding list to the spine; tenderness over the lumbar spine; discomfort with flexion and extension of the lumbar spine; lower-extremity asymmetries; "no unusual vertebral prominence or depression"; a full range of motion at the hips, knees, and ankles, with some pain experienced in the hips; "good" reaching abilities with minimal decrease in overhead reaching; normal muscle tone; and "no obvious atrophy" in the upper extremities. Tr. 411-12. Finally, Dr. Ogisu reported full or close-to-full strength in Plaintiff's shoulder abductors, shoulder rotators, biceps, triceps, wrists, hands, hip flexors, hip abductors, knee extensors and flexors, and ankle dorsiflexors and plantar flexors. Tr. 412-13.

Dr. Ogisu concluded that Plaintiff had "[c]hronic lower back pain," noting that Plaintiff was having a lot of "mechanical pain." Tr. 413. He further opined that Plaintiff could sit and stand for six hours in an eight-hour workday, walk for at least four hours but not more than six hours in an eight-hour workday, and could carry up to ten pounds occasionally and five pounds frequently. Tr. 413.

While Dr. Ogisu "personally observed and examined the claimant," the ALJ assigned little weight to Dr. Ogisu's findings because the ALJ concluded Dr. Ogisu's opinion was irreconcilable with his own objective findings, where he concluded Plaintiff had an "unremarkable gait," "intact sensation," and a "negative straight-leg test." Tr. 26.

The ALJ's rejection was improper. As stated, an ALJ must set out a detailed and thorough summary of the facts in order to properly reject an examining or treating physician's

opinion. *Magallanes*, 881 F.2d at 751. Here, however, the ALJ's rejection of Dr. Ogisu's opinion is limited to three sentences, one that contains a clause conclusively explaining Dr. Ogisu's opinion that Plaintiff can carry ten pounds occasionally and five pounds frequently, and one stating that three of Dr. Ogisu's findings—unremarkable gait, intact sensation, and a negative straight-leg test—are "good" "examination findings," thus tending to discount Dr. Ogisu's more restrictive opinion. Tr. 26.

While these three findings may be "good," Dr. Ogisu's treatment notes set forth a number of more restrictive clinical findings, including the fact that Plaintiff's posture was far-head-forward, that he had a flattened lumbar lordosis, uneven shoulders and pelvis, a list to the spine, tenderness over the lumbar spine, discomfort with flexion and extension of the lumbar spine, and lower-extremity asymmetries. Tr. 411-12. The ALJ did not discuss these findings and explain why they are entitled to less weight than the clinical findings she cites in support of her decision assigning "little weight" to Dr. Ogisu's opinion.

An ALJ "must do more than offer his conclusions." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418 421-22 (9th Cir. 1988)). "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* In *Embrey*, for instance, the Ninth Circuit concluded that the ALJ failed to give sufficiently specific reasons for rejecting a treating physician's opinion that the plaintiff was permanently disabled. 849 F.2d at 422. There, the court noted, the ALJ failed to "explain why he disagree[d] with Dr. Baker's conclusion that [the plaintiff] [was] permanently unemployable, or give reasons for rejecting" the physicians standing, lifting, carrying, and sitting limitations. *Id.* Instead, the ALJ simply stated "that the objective factors point toward an adverse conclusion," while making "no

effort to relate any of [those] objective factors to any of the specific medical opinions and findings he reject[ed]." *Id.*

Similarly, here, in assigning little weight to Dr. Ogisu's standing, lifting, carrying, and sitting limitations, the ALJ simply points to three objective factors—unremarkable gait, intact sensation, and a negative straight-leg test—and conclusively states that they point toward an adverse conclusion. The ALJ makes no attempt to articulate why or how these factors relate to the specific medical opinion she rejects, or why they necessitate rejecting that opinion. Moreover, as discussed above, the ALJ fails to set forth and explain why the conflicting clinical findings contained in Dr. Ogisu's treatment notes—which tend to point in the direction of the restrictive finding Dr. Ogisu provided—are less credible than the clinical findings she points to in support of her decision to assign little weight to Dr. Ogisu's opinion. This was erroneous.

The error was also harmful. As stated, a court may not reverse an ALJ's decision on account of an error that is harmless. *Stout*, 454 F.3d at 1055-56. The Ninth Circuit has "only found harmless error," however, "when it [is] clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Robbins*, 466 F.3d at 885 (internal quotation and citation omitted). Here, because the ALJ did not consult the vocational expert regarding whether a person with the profile Dr. Ogisu attributed to Plaintiff could perform substantial gainful work in the economy, it is unclear whether the ALJ's error would have changed the ultimate nondisability determination; thus, the error was harmful.

In response, the Commissioner sets forth a number of reasons for upholding the ALJ's findings, specifically, that Plaintiff declined physical therapy and other medical treatment for his back pain; that other findings in Dr. Ogisu's treatment notes contradict his restrictive standing, lifting, carrying, and sitting limitations, including findings of full range of motion, full or nearly

Page 11 – OPINION & ORDER

full strength in arms and shoulders, and no obvious atrophy in the upper extremities; and, finally, that other medical examiners' findings contradict Dr. Ogisu's opinion. The ALJ did not, however, cite to these rationales in support of her argument attributing little weight to Dr. Ogisu's opinion, and the Court "may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (internal citation omitted). Accordingly, in sum, the ALJ failed to provide a detailed and thorough summary of the facts explaining why Dr. Ogisu's opinion is entitled to little weight. The Court must therefore remand the case to the Secretary for proper consideration of Dr. Ogisu's evidence. *See Embrey*, 849 F.2d at 422 (stating that the court "must remand [the] case to the Secretary for proper consideration of the physicians' evidence" after the ALJ failed to "give sufficiently specific reasons for rejecting the [physicians'] conclusion[s]").

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings.

Upon remand, the ALJ shall:

Reassess the medical opinion of Dr. Ogisu. Should the ALJ determine him not to be credible, the ALJ shall provide sufficient reasons for doing so.

IT IS SO ORDERED.

DATED this 3C day of October, 2017.

MARK D. CLARKE
United States Magistrate Judge